IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BENJAMIN MOORE, BRITTANY MOORE, OWEN MOORE, and OSCAR MOORE<br><br>    Plaintiffs,<br><br>vs.<br><br>STATE OF UTAH, UTAH HIGHWAY PATROL, BEAVER COUNTY SHERIFF'S OFFICE, DEPUTY SHERIFF STEVEN KLINE, in his individual and official capacity, TROOPER TRAVIS MCILLNAY, in his individual and official capacity, SERGEANT DAVID BAIRETT, in his individual and official capacity, and JOHN DOES 1-20<br><br>    Defendants, | MEMORANDUM OPINION AND ORDER<br><br>Case No. 2:13-CV-29 |

This matter is before the court on a motion to dismiss filed by defendants State of Utah, Utah Highway Patrol, Trooper Travis McIllnay and Sgt. David Bairett ("State Defendants"). (Dkt. No. 9.) Having reviewed the relevant memoranda, the court issues the following Memorandum Opinion and Order.

## **BACKGROUND**

The background facts of the case are presented as they appear in the plaintiffs' amended complaint. (Dkt. No. 6.) Because this is a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the facts alleged in plaintiffs' amended complaint are assumed to be

true. Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 249 (2009).

On the morning of February 12, 2011, several motorists on Interstate 15 near Beaver, Utah observed a vehicle being driven erratically. (Am. Compl. at 3.) Defendant Deputy Sheriff Steven Kline of Beaver County stopped the vehicle on I-15 near milepost 115. (Id.) Deputy Sheriff Kline called defendant Trooper Travis McIlnay to assist with the stop at about 10:30 a.m. (Id.)

The vehicle's driver was identified as 85-year-old Tomi Kawamoto. (Id. at 4.) While conversing with Mr. Kawamoto, Trooper McIlnay learned that Mr. Kawamoto had taken a medication for drowsiness. (Id.) This conversation prompted Trooper McIlnday to subject Mr. Kawamoto to a field sobriety test. (Id.) After Mr. Kawamoto struggled with the field test, Trooper McIlnay consulted with the Beaver County Attorney. (Id. at 4-5.) Following this consultation, Trooper McIlnay transported Mr. Kawamoto to the hospital in Beaver where they arrived at 11:25 a.m. (Id. at 5.)

Once at the hospital, Mr. Kawamoto refused to undergo lab tests. (Id.) Speaking with Trooper McIlnay, Mr. Kawamoto's attending physician opined that Mr. Kawamoto may have been suffering from dementia. (Id.) The physician's opinion was based on Mr. Kawamoto's erratic answers to various questions. (Id.)

Before long, defendant Sgt. Bairett of the Utah Highway Patrol arrived at the hospital to question Mr. Kawamoto. (Id.) Sgt. Bairett did not believe Mr. Kawamoto was impaired. (Id.) Mr. Kawamoto eventually grew angry with his detention and threatened to sue defendant Utah Highway Patrol and Trooper McIlnay. (Id.) Sgt. Bairett then contacted Utah Highway Patrol Lt. Steve Esplin for guidance, who instructed him to contact the Beaver County Attorney. (Id.)

Following Lt. Esplin's recommendation, Trooper McIlnay again consulted the Beaver County Attorney for further legal guidance. (Id.) After speaking with the Beaver County Attorney, Sgt. Bairett and Trooper McIlnay determined they had no legal basis for further detaining Mr. Kawamoto and released him from the hospital at approximately 12:30 p.m. (Id.)

When Mr. Kawamoto was leaving the hospital, Trooper McIlnay noticed damage to the rim of Mr. Kawamoto's right front tire. (Id.) Trooper McIlnay advised Mr. Kawamoto of the damage and escorted him to the Beaver Valley Chevron Station, where Trooper McIlnay helped Mr. Kawamoto obtain and mount a new tire. (Id.)

Approximately three hours later, at 3:30 p.m., Mr. Kawamoto, driving on the wrong side of the road, struck a vehicle driven by plaintiff Benjamin Moore in a head-on collision roughly 140 miles out of Beaver, Utah. (Id. at 6.) Mr. Kawamoto died in the collision. Mr. Moore suffered substantial personal injuries. (Id.)

On December 10, 2012, plaintiffs Benjamin, Brittany, Owen, and Oscar Moore brought suit against defendants State of Utah, Utah Highway Patrol, Trooper McIlnay, Sgt. Bairett, Beaver County, and Deputy Sheriff Kline in state court. (Dkt. No. 1.) The case was removed to federal court January 11, 2013. (Id.) Plaintiffs filed an amended complaint on January 31, 2013. (Dkt. No. 6.) The State Defendants filed the motion to dismiss which is now before the court on February 12, 2013.[1] (Dkt. No. 9.) Plaintiffs filed a memorandum in opposition on March 22, 2013, to which the State Defendants replied on April 23, 2013. (Dkt. Nos. 12 and 16.) No oral argument was requested.

## DISCUSSION

---

[1] Defendants Beaver County and Deputy Sheriff Kline do not join in the motion.

Plaintiffs raise three claims for relief in their amended complaint: (1) negligence, (2) loss of consortium, and (3) violation of substantive due process rights under the Fourteenth Amendment to the Constitution of the United States pursuant to 42 U.S.C. § 1983. In the course of briefing this motion to dismiss, plaintiffs have conceded that, with respect to the first two claims (negligence and loss of consortium), the individual defendants "McIlnay and Bairett face no individual liability pursuant to the Governmental Immunity Act of Utah because they were, at all times relevant to the First Amended Complaint, acting within the course and scope of their employment." (Pls.' Resp. to Defs.' Mot. to Dismiss at 18.)  Plaintiffs have also conceded that, with respect to the third claim (violation of substantive due process rights pursuant to 42 U.S.C. § 1983),  "[m]unicipalities and other state agencies may not be held liable pursuant to § 1983 'solely because [they] employ a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a respendeat superior thoery.'" (Pls.' Resp. to Defs.' Mot. to Dismiss at 18 [quoting Monell v. Dept. of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)]).

As a result of these concessions, only two primary questions remain before the court: (1) whether the State of Utah and the Utah Highway Patrol owe an actionable duty of care to the plaintiffs sufficient to support claims of negligence and loss of consortium, and (2) whether the actions of  Trooper McIlnay and Sgt. Bairett violated the plaintiffs' substantive due process rights pursuant to 42 U.S.C. § 1983.

**I. Negligence and Loss of Constortium (Causes of Action 1 and 2)**

In their first claim, for negligence, plaintiffs allege that the defendants "owed a duty to Benjamin Moore, and to others operating a motor vehicle," which they negligently breached "[b]y releasing Mr. Kawamoto onto the public highways" (Am. Compl. at 7.) This alleged

breach caused Benjamin Moore to suffer "substantial personal injuries and to incur...special damages and general damages." (Id.) In their second claim, for loss of consortium, plaintiffs maintain that the "acts, omissions and negligence of the Defendants...have proximately caused personal injury to Benjamin Moore and have proximately caused Brittany Moore to lose the care, comfort, society, companionship and services of her lawful husband." (Id.) Plaintiffs further allege that the defendants' "acts, omissions and negligence...have proximately caused Owen and Oscar Moore to lose the care, comfort, society, companionship and services of their father, Plaintiff Benjamin Moore." (Id.) Since plaintiffs have conceded that the individual defendants Trooper McIlnay and Sgt. Bairett are not liable under the first two claims, the court need only determine whether the State of Utah or Utah Highway Patrol owed the plaintiffs an actionable duty of care sufficient to support claims of negligence and loss of consortium.

"As a matter of public policy" Utah law does "not expose governmental actors to tort liability for all mishaps that may befall the public in the course of conducting their duties." Webb v. University of Utah, 125 P.3d 906, 909 (Utah 2005). Instead, "government actors should be answerable in tort when their negligent conduct causes injury to persons who stand so far apart from the general public that we can describe them as having a special relationship to the governmental actor." Id. Thus, Utah courts have held that the government may only be held liable for negligence if it has a "special relationship" with a plaintiff. Id. at 910. This requisite special relationship can be formed in four ways:

> (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to a protect a person or property; (3) by government actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.

Id. at 912 (quoting Day v. State, 980 P.2d 1171, 1175 (Utah 1999)).

Plaintiffs claim that the required special relationship existed through the fourth method of formation identified in Day and Webb—namely, a relationship arising from an agency's custody of a third party who causes harm to the plaintiff. (Pls.' Resp. to Defs.' Mot. to Dismiss at 19.) Plaintiffs argue that "when the Defendants took Mr. Kawamoto into custody, and then helped him buy a tire, mount it, and return to the road, the[y] formed a special relationship with Plaintiffs." (Id. at 20.)

Plaintiffs' argument that the State of Utah and the Utah Highway Patrol breached a duty of care stemming from a special relationship fails for two primary reasons. First, at the time of the accident, Mr. Kawamoto was no longer in the custody and control of the Utah Highway Patrol or the State of Utah. Therefore, whatever special relationship existed between Mr. Kawamoto and the State of Utah and the Utah Highway Patrol had ceased. Second, on a more fundamental level, Mr. Moore, the injured party in this case, did not stand so far apart from the general public that the government owed him a special duty of care. As a driver on the highway, Mr. Moore was a member of the public at large and was owed the same duty of care as any other driver. See also Ferree v. State, 784 P.2d 149, 151 (Utah 1989) (stating that "[f]or a government agency and its agents to be liable for negligently caused injury suffered by a member of the public, the plaintiff must show a breach of a duty owed him as an individual, not merely the breach of an obligation owed to the general public at large").

Because, as a matter of law, the State of Utah and the Utah Highway Patrol did not owe a duty of care sufficient to support the plaintiffs' tort claims, the claims for negligence and loss of consortium against the State Defendants must be dismissed.

**II. Substantive Due Process and the Danger Creation Theory**

The remaining question before the court is whether the actions of Trooper McIlnay and Sgt. Bairett deprived plaintiffs of their Fourteenth Amendment substantive due process rights under the "danger creation" doctrine. They argue that by "retaining Mr. Kawamoto and then returning him to the public highway system" the defendants "created a danger to other motorists on the roadway, including Plaintiff Benjamin Moore." (Am. Compl. at 7.) Plaintiffs argue that defendants recklessly disregarded the risk of returning Mr. Kawamoto to the highway in a manner that "shocks the conscience" and ultimately "violated Plaintiff Moore's right to substantive due process under the Fourteenth Amendment" pursuant to 42 U.S.C. § 1983 (Id.)

The danger creation doctrine, also known as the "state-created danger" doctrine, "has been addressed in detail by the United States Court of Appeals for the Tenth Circuit in recent years." Thayer v. Washington County School District, 858 F. Supp. 2d. 1269, 1273 (D. Utah 2012). As a result, the requirements necessary for a danger creation claim to succeed have been well articulated. In order to invoke the danger creation doctrine, two preconditions must be established: affirmative conduct and private violence. Gray v. University of Colo. Hosp. Authority, 672 F.3d 909, 920 n.8 (10th Cir. 2012). Once a plaintiff demonstrates the presence of those two preconditions, a plaintiff's claim must meet additional requirements for determining whether a state official created a special danger for the plaintiff. In Armijo v. Wagon Mound Public Schools, 159 F.3d 1253, 1262-63 (10th Cir. 1988), the Tenth Circuit articulated a six-part test for determining whether a state official created a special danger for a plaintiff. To establish that a state official created a special danger, the plaintiff must demonstrate (1) that the plaintiff "was a member of a limited and specifically definable group"; (2) that the state official's conduct

put the plaintiff "at substantial risk of serious, immediate and proximate harm"; (3) that "the risk was obvious or known"; (4) that state officials "acted recklessly in conscious disregard of that risk"; (5) that such conduct "when viewed in total, is conscience shocking"; and (6) that the state officials "created the danger or increased the plaintiff's vulnerability to the danger in some way." Armijo, 159 F.3d at 1262-63; see also Thayer, 858 F. Supp. 2d. at 1277-80. A substantive due process claim under the danger creation doctrine can only survive if a plaintiff can demonstrate all six of these elements.

### A.     Necessary Preconditions Are Not Present

The plaintiffs substantive due process claim fails to demonstrate the existence of the preconditions necessary for the application of the danger creation theory. The first precondition is more fully defined by the Tenth Circuit in Gray, in which the court notes that the "state-created danger doctrine necessarily involves affirmative conduct on the part of the state placing the plaintiff in danger." Gray, 672 F.3d at 916. However, there must be a "sufficient causal link" alleged between the "danger created by an affirmative act of the state [or a state actor] and the harm inflicted upon the victim by a private party." Id. at 917. Furthermore, the danger to the victim cannot be "too remote a consequence" of a defendant's action if the danger creation theory is to be applied. Id. For instance, in Graham v. Independent School Dis. No. I-89, 22 F.3d 991 (10th Cir. 1994), the parents of children who were assaulted on school premises brought a danger creation claim against the school district for placing their children in the same location as students with known aggressive tendencies. The Tenth Circuit held that any danger to the victims was "too remote a consequence" of the school district's actions in placing the children in the same location. Id. at 995.

Plaintiffs specifically allege that the assistance rendered to Mr. Kawamoto in helping him replace his damaged tire "constituted affirmative conduct" necessary to meet the first precondition for the application of the danger creation theory. (Pls.' Resp. to Defs.' Mot. to Dismiss at 9.) Plaintiffs allege that had the defendants not helped Mr. Kawamoto replace his tire, Mr. Kawamoto "could not have collided with Plaintiff Moore ... later because Mr. Kawamoto could not have driven his car with a damaged or flat tire." (Id. at 9.) However, plaintiffs do not consider that Mr. Kawamoto could have replaced his tire on his own, or even returned to the road with a damaged tire, making himself a greater hazard. As a result, there is no sufficient causal link between the alleged affirmative action and the harm to Mr. Moore. Furthermore, because the accident occurred hours after the replacement of the tire and more than a hundred miles away from the Beaver Valley Chevron Station, the danger posed by Mr. Kawamoto to Mr. Moore was "too remote a consequence" of defendants' affirmative action.

The second precondition is an "act of private violence" that is the direct cause of a plaintiff's injuries. Gray, 672 F.3d at 928. The Tenth Circuit defines a private act of violence as "an act involving some degree of deliberateness" beyond negligence. Id. In fact, the Tenth Circuit has explicitly held that "harm associated with a negligent act is never constitutionally cognizable under the Due Process Clause." Id. at 928-29 (citing Daniels v. Williams, 474 U.S. 327, 328 (1986)).

Plaintiffs maintain that Mr. Kawamoto's actions, including traveling the wrong way on I-15 and striking Mr. Moore in a head on collision, qualify as private acts of violence necessary to pursue a claim under the danger creation theory. Plaintiffs argue that Gray merely requires intent, not malice, and that "Mr. Kawamoto intended the natural consequences of driving the

9

wrong way on Interstate-15: a violent head on collision." (Pls.' Resp. to Defs.' Mot. to Dismiss at 11.) The court cannot agree that Mr. Kawamoto's action were intentionally violent rather than negligent. Plaintiffs' inference that Mr. Kawamoto intended a violent head-on collision is unsupported speculation. To argue that a car accident was an intentionally violent act stretches the definition of the term too far. This is especially true in light of the fact that the Tenth Circuit has only considered such acts as murder, child abuse, molestation, kidnaping, shooting, stabbing, and hazing as private acts of violence sufficient to warrant consideration of the danger creation theory. Gray, 672 F.3d at 928 n.16.[2] Mr. Kawamoto's act of driving on the wrong side of the road simply does not fall in the category of a violent act for purposes of meeting the preconditions of a danger creation claim.

    Plaintiffs' substantive due process claim against the State Defendant under the danger

---

[2]The Gray court provides a comprehensive list of Tenth Circuit danger creation cases along with their accompanying acts of private violence serving as the second "necessary precondition to ... application of the state-created danger theory." Gray, 672 F.3d at 928 n.16. The list includes Graham, 22 F.3d at 993 (in which shooting and stabbing constituted the violent act for purposes of the danger creation preconditions); Uhlrig v. Harder, 64 F.3d 567, 571 (10th Cir. 1995) (in which murder was the violent act); Liebson v. New Mexico Corr. Dept., 73 F.3d 274, 275 (10th Cir. 1996) (in which kidnaping and sexual assault constituted the violent act); Seamons v. Snow, 84 F.3d 1226, 1230 (10th Cir. 1996) (in which hazing was the violent act); Radecki v. Barela, 146 F.3d 1227, 1228 (10th Cir. 1998) (in which murder was the violent act); Armijo, 159 F.3d at 1257 (in which suicide by a self-inflicted gunshot would was the violent act); Sutton v Utah State Sch. for the Deaf and Blind, 173 F.3d 1226, 1230-31 (10th Cir. 1999) (in which sexual molestation was the violent act); Currier v. Doran, 242 F.3d 905, 909-10 (10th Cir. 2001) (in which child abuse and homicide constituted the violent act); Martinez v. Uphoff, 265 F.3d 1130, 1132 (10th Cir. 2001) (in which murder was the violent act); Ruiz v. McDonnell, 299 F.3d 1173,1178 (10th Cir. 2002) (in which child abuse was the violent act); Christiansen v. City of Tulsa, 332 F.3d 1270, 1277 (10th Cir. 2003) (in which a suicide by a self-inflicted gunshot wound was the violent act); Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1135 (10th Cir. 2006) (in which child abuse and homicide constituted the violent act); Rost ex Rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1117-18 (10th Cir. 2008) (in which child molestation was the violent act); Robbins v. Oklahoma, 519 F.3d 1242, 1245-46 (10th Cir. 2008) (in which child abuse and homicide constituted the violent act).

creation doctrine fails as a matter of law because plaintiffs' claim does not meet the preconditions set by the Tenth Circuit for application of the danger creation doctrine.

### B.      Plaintiffs' Claim Fails the Armijo Test

Even if plaintiffs' case met the preconditions for application of the danger creation doctrine, plaintiffs' substantive due process claim against the State Defendants fails as a matter of law under the Armijo test. An application of this six-part test to plaintiffs' claim demonstrates that the actions of Trooper McIlnay and Sgt. Bairett did not deprive the plaintiffs of their substantive due process rights under the danger creation doctrine.

#### 1.      Plaintiff Was Not a Member of a Limited and Specifically Definable Group

The Tenth Circuit has held that a state-created danger must be directed against "a discrete plaintiff rather than at the public at large." Gray v. University of Colorado Hosp. Authority, 672 F.3d 909, 920 (10th Cir. 2002) citing Ruiz v. McDonnell, 299 F.3d 1173, 1183 (10th Cir. 2002). Plaintiffs' attempt to define Mr. Moore as a member of a "the discrete group...[of] southbound drivers on Interstate 15 between Beaver County, Utah—the location where the Defendants detained Mr. Kawamoto—and Las Vegas, Nevada, Mr. Kawamoto's stated destination." (Pls.' Resp. to Defs.' Mot. to Dismiss at 16.) This attempt to place Mr. Moore in a limited and specifically definable group fails in light of the Tenth Circuit's decisions regarding the danger creation doctrine. For instance, in Ruiz v. McDonnell, 299 F.3d 1173, 1183 (10th Cir. 2002), the Tenth Circuit found that a plaintiff was not a member of a discrete group by virtue of being a customer of a negligently licensed day care because any parent could have brought their child to the facility. When patrons of a day care cannot be considered a discrete and limited group, all possible southbound drivers on I-15 between Beaver County, Utah and Las Vegas, Nevada are

certainly not members of a discrete and limited group. Therefore, plaintiffs' complaint fails under the first part of the Armijo test.

### 2. Plaintiff was not Subjected to Substantial Risk of Serious, Immediate, and Proximate Harm

In order for a state-created danger claim to be viable, it must also place the plaintiff at substantial risk of serous, immediate, and proximate harm. This part of the Armijo test "focuses on whether the risk is either 'substantial,' and the harm is 'immediate.'" Thayer, 858 F. Supp. 2d at 1278. Though the harm suffered by Mr. Moore was substantial, it was neither immediate nor proximate. Mr. Moore's collision with Mr. Kawamoto occurred five hours after the initial traffic stop and three hours after Mr. Kawamoto was released from the hospital. Furthermore, the collision took place more than a hundred miles away from the location of defendants' interaction with Mr. Kawamoto. Therefore, the harm to which Mr. Moore was exposed cannot be considered immediate.

Defendants' action also did not expose Mr. Moore to risk of proximate harm. Countless intervening causal factors might have occurred between the time and distance separating the accident from the defendants' interaction with Mr. Kawamoto. Because the risk to Mr. Moore was neither immediate or proximate, plaintiffs' claim fails under the second part of the Armijo test.

### 3. The Risk Was Not Obvious or Known

Pursuant to the foregoing discussion regarding the nature of the harm, the facts offered by the plaintiffs are insufficient to support a finding that the risk at issue was certainly obvious or known. The risk in question was whether someone would be seriously injured as a result of Mr.

Kawamoto's driving after he was released. Because Mr. Kawamoto was driving erratically before his stop and because he denied treatment at the hospital, it is conceivable that the risk that he may cause injury to someone on the road upon his release could have been known. However, Trooper McIlnay and Sgt. Bairett did not have probable cause sufficient to detain him further, which implies that in actual fact, the risk was not obvious or known to them. Furthermore, the risk that Mr. Kawamoto would be driving on the wrong side of the interstate more than two hours later—which was the behavior that actually caused the actual harm to Mr. Moore—is much less obvious and could not have been known. The facts as asserted by the plaintiffs at best support a claim of negligence (from which plaintiffs have conceded Trooper Bairett and Sgt. McIlnay are immune), and could hardly support the assertion that the risk was obvious or known. Therefore, plaintiffs' claim fails under the third part of the Armijo test.

### 4. The State Officials Did Not Act Recklessly, Nor in Conscious Disregard of the Risk

Recklessness in the danger creation context requires proof that the defendants were "aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow," and they nevertheless "proceeded in conscious and unreasonable disregard of the consequences." Thayer, 858 F. Supp. 2d at 1279 (quoting Medina v. City and County of Denver, 960 F.2d 1493, 1496 (10th Cir. 1992)). There is not sufficient evidence to show that Trooper McIlnay and Sgt. Bairett exhibited a conscious disregard for a known risk to the plaintiffs. To the contrary, they transported Mr. Kawamoto to the local hospital, tried to get Mr. Kawamoto treatment, released him from the hospital only after twice consulting the Beaver County Attorney, and even helped Mr. Kawamoto put a new tire on his car so that he would be safer on the road. When taking those actions into account, Trooper McIlnay and Sgt. Bairett were the

"opposite of a state actor who may be held accountable for reckless behavior under the danger creation theory." Thayer, 858 F. Supp. 2d at 1279. Instead of acting with reckless indifference, they seem to have taken all of the "reasonable steps to assure...safety and eliminate [] danger" without infringing Mr. Kawamoto's rights. Thayer, 858 F. Supp. 2d at 1280. Therefore, plaintiffs' claim fails under the fourth part of the Armijo test.

### 5. Defendants' Conduct, When Viewed in Total, Does not Shock the Conscience

In order to find that conduct is conscience-shocking, the conduct must display "a high level of outrageousness" and "a magnitude of potential or actual harm that is truly conscience shocking." Armijo, 159 F.3d at 1262. This extremely high standard requires that state actors knowingly "place an individual in a position of danger, effectively stripping a person of her ability to defend herself." Id. at 1263. Furthermore, such conduct requires "'culpable knowledge,' which is satisfied by a showing of actual wrongful intent or a level of recklessness that exceeds mere negligence or gross negligence." Thayer, 858 F. Supp. 2d at 1280.

The conduct of Trooper McIlnay and Sgt. Bairett, when viewed against such a demanding standard, does not shock the conscience. The defendants did not knowingly place Mr. Moore in danger and strip him of his ability to defend himself. Rather, they detained Mr. Kawamoto as long as was legally reasonable and made sure his car was safe before allowing him to return to the road. Such behavior simply does not shock the conscience. For this reason, plaintiffs' claim fails under the fifth part of the Armijo test.

### 6. Defendants Did Not Create the Danger or Increase Mr. Moore's Vulnerability to the Danger.

The Tenth Circuit held in <u>Armijo</u> that "if the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed." 159 F.3d at 1263. Mr. Kawamoto was driving erratically before he was stopped, taken to the hospital, and evaluated by the defendants. In other words, whatever danger Mr. Kawamoto posed to the Mr. Moore after the defendants released Mr. Kawamoto from the hospital already existed prior to defendants' intervention. Indeed, the defendants seem to have done all that they believed to be was legally within their power to mitigate the risk posed by Mr. Kawamoto to himself and other drivers. While plaintiffs contend that, were it not for the defendants releasing Mr. Kawamoto and helping him replace his tire, Mr. Moore would not have been injured, this type of "but for" analysis is too remote to show that the defendants caused the accident. Therefore, plaintiffs' claim fails under the sixth part of the <u>Armijo</u> test.

Because plaintiffs' claim against the State Defendants for a violation of substantive due process rights pursuant to 42 U.S.C. § 1983 fails under all six parts of the <u>Armijo</u> test, the claim must be dismissed.

## **CONCLUSION**

For the reasons discussed above, the State defendants did not owe a duty of care to the plaintiffs sufficient to support plaintiffs' tort claims. Furthermore, plaintiffs' claim against the State Defendants for a violation of substantive due process rights pursuant to 42 U.S.C. § 1983 under the danger creation doctrine fails to meet the preconditions of the doctrine's application. Even if the claim met the preconditions, it fails under the Tenth Circuit's <u>Armijo</u> test. Therefore,

the State Defendants' motion to dismiss is GRANTED. Plaintiffs' complaint is DISMISSED as to the State Defendants.

DATED this 18th day of June, 2013.

_____

Dee Benson

United States District Judge